IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CARLETHA PURIFOY,
      Petitioner,

vs.                            Case No.:  3:10cv312/LAC/EMT

KENNETH S. TUCKER,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 12, 13, 14).  Petitioner filed a reply (doc. 19).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 13, 14).[2]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2004-CF-003283, with one count of armed kidnapping with a firearm

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 13, 14).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

(Count 1), one count of robbery armed with a firearm (Count 2), and one count of possession of a firearm by a convicted felon (Count 3) (Ex. A at 1).  The offense conduct occurred on January 15, 2004 (*id.*).  Following a jury trial on Counts 1 and 2, on August 25–26, 2005, Petitioner was found guilty as charged (*see* Ex. A at 58–59, Ex. B). On September 21, 2005, Petitioner entered a guilty plea to the possession of a firearm by a convicted felon charge (Ex. A at 88–91).  The same day, Petitioner was adjudicated guilty of all charges and sentenced as a prison releasee reoffender to life imprisonment without the possibility of parole on Count 1 and a concurrent term of thirty (30) years of imprisonment with a ten-year mandatory minimum sentence on Count 2, with pre-sentence credit of 428 days (Ex. A at 65–85, 123–35).  As to Count 3, she was sentenced to a term of fifteen (15) years of imprisonment, with a three-year mandatory minimum, to run concurrently with the sentence on Count 1 and with the same pre-sentence credit (*id.*).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-5120 (Ex. C).  The First DCA affirmed the judgment per curiam without written opinion on October 25, 2006, with the mandate issuing November 13, 2006 (Ex. F).  Purifoy v. State, 940 So. 2d 1129 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek further review.

On December 28, 2006, Petitioner filed a motion for mitigation of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. G).  The state circuit court denied the motion in an order rendered January 8, 2007 (Ex. H).

On September 27, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. I at 137–48).  She subsequently filed an amended motion (*id.* at 153–55).  The state circuit court appointed counsel for Petitioner and held a limited evidentiary hearing on three of Petitioner's claims (*id.* at 161–224).  The state circuit court denied the Rule 3.850 motion (*id.* at 225–40).  Petitioner appealed the decision to the First DCA, Case No. 1D09-2456 (Ex. J).  The First DCA affirmed the decision per curiam without written opinion on July 7, 2010, with the mandate issuing August 3, 2010 (Ex. K).  Purifoy v. State, 39 So. 3d 1269 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on August 20, 2010 (doc. 1).  Respondent concedes the petition is timely (doc. 12 at 18).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to"

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the

governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* <u>Bell v. Cone</u>, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting <u>Williams</u>, 529 U.S. at 411) (citing <u>Harrington v. Richter</u>, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>, *supra* at 1291 (citing <u>Harrington</u>, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").    The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

_____

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement.  After Duncan, however, the Eleventh Circuit has taken a more narrow approach.  For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "Counsel was ineffective for failure to establish the Defendant's culpability was equal or less than 2 co-defendants."

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner contends defense counsel performed ineffectively by failing to present a defense that her culpability was equal to or less than the culpability of the other two participants in the crimes, because she was only a minor, unwilling participant (doc. 1 at 3).  She asserts counsel should have presented testimony from Ms. Earnshaw, an employee of Wal-Mart, who would have testified that Petitioner was a minor participant (*id.*).  She also asserts, "There were no jury instructions offered" (*id.*).  Petitioner contends she was prejudiced by counsel's error, because she "received greater blame" than the other two participants (*id.*).  Petitioner asserts she raised this claim in her Rule 3.850 motion by arguing counsel was ineffective for failing to present a defense that the "crime had a ringleader" (*id.*).

Respondent contends Petitioner presented the state courts with a claim that defense counsel was ineffective for failing to present a defense that she acted under duress from male participants who were "ringleaders," but she did not present a claim that counsel should have presented a defense that her culpability was equal to or less than the co-defendants (doc. 12 at 24).  Therefore, the latter aspect of Ground One was not exhausted and is procedurally barred (*id.*).  With regard to the exhausted aspect of the claim, that counsel failed to present a duress defense, Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 26–29).

In Petitioner's reply, she clarifies her claim is that defense counsel was ineffective for failing to present a defense that she was not a willing participant and only committed the offenses under duress from "male ringleaders," specifically, Garren Smith, Christopher Saulsberry, and Clifford Vason (doc. 19 at 6–7).

The only claims presented to the state court that resemble the arguments Petitioner presents here are the claims presented in Grounds One, Two, and Three of her Rule 3.850 motion (Ex. I at 138–40).  In those claims, Petitioner argued defense counsel was ineffective for failing to present evidence that she participated in the crimes only under duress, specifically, threats and intimidation of Garren Smith and two "male participants," one of whom was Clifford Vason (*id.*).  Petitioner argued defense counsel should have presented testimony from Clifford Vason and Virginia Earnshaw as witnesses for the defense (*id.*).  Only those claims were exhausted in the state courts;

therefore, to the extent Petitioner presents any other claim in Ground One, it is unexhausted and procedurally barred.

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms."  Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'"  Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict

the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting <u>Putman v. Head</u>, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. <u>Strickland</u>, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal. *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

        2.      Federal Review of State Court Decision

As previously discussed, in Grounds One, Two, and Three of Petitioner's Rule 3.850 motion, she argued defense counsel was ineffective for failing to present evidence that she participated in the crimes only under duress, specifically, threats and intimidation of Garren Smith and two "male participants," one of whom was Clifford Vason (Ex. I at 138–40.).   Petitioner argued defense counsel should have presented testimony from Clifford Vason and Virginia Earnshaw as witnesses in support of this defense (*id.*).   The state circuit court identified the <u>Strickland</u> standard as the appropriate legal standard for reviewing Petitioner's claims (*id.* at 226–28).   The court denied Grounds One, Two, and Three on the following grounds:

> First, Defendant contends that counsel was ineffective for not offering at trial the defense that Defendant committed the crimes under duress due to threats from the "male ringleaders."  Defendant contends that had she not obeyed the males, she would have been "at risk of being harmed or possibly killed."

<u>Duress</u>

> [T]he duress defense requires a showing that at the time of the commission of the charged offense (1) the defendant was subjected to a real present danger, existent at the time, imminent and not to be avoided; or (2) under all the circumstances shown by the evidence, the defendant had reasonable grounds to believe that such danger was real, imminent and impending, and did so believe at the time the offense was committed.  One claiming the defense must show that the coercion was continuous, and that he had no reasonable opportunity to escape the compulsion without committing the crime.

<u>Gahley v. State</u>, 567 So. 2d 456, 459 (Fla. 1st DCA 1990) (internal citations omitted).

> Counsel did in fact argue the defense of duress.   In both her opening statement and closing argument, counsel made it clear that Defendant's case was based on duress.[FN 3]  Counsel also elicited testimony to support such a defense. Defendant's family testified that when Defendant talked to her boyfriend [Garren Smith] on the phone in the two days before the incident, she was upset, pacing, and crying.[FN 4]  Counsel also offered expert testimony that Defendant was in fear for herself and her family at the time of the kidnapping.[FN 5]  The expert, Psychologist James Larson, testified that Defendant was a victim of post-traumatic stress disorder (PTSD), making her susceptible to the control of others.   He additionally testified that it was very reasonable to [sic] Defendant to believe that her boyfriend could harm her even though he was incarcerated.[FN 6]  Also, Defendant herself testified

about her fear of her boyfriend as her motivation for committing the offense.[FN 7]
As indicated by the record, counsel presented the defense of duress by introducing
evidence and by arguing the facts and the law.  Counsel's performance was not
deficient.

<u>Male Ringleaders</u>

Additionally, Defendant alleges that counsel should have argued that "male
ringleaders" intimidated Defendant into committing the instant offenses.  Defendant
had an opportunity to testify at trial.  She explained her fear and her reasons for her
actions.[FN 8]  However, she did not testify that the men with her threatened her or
frightened her, thereby causing her to commit the instant offense.  In fact, Defendant
admitted that neither of the males involved with the crime threatened her to commit
the crime.[FN 9]  Counsel, therefore, was not deficient for failing to present a
defense contrary to Defendant's own testimony.  Defendant has failed to prove either
deficient performance or prejudice, and her first ground does not entitle her to relief.
. . . .

Next, Defendant asserts that counsel's failure to call co-defendant Clifford
Vason and store clerk Virginia Earnshaw as witnesses constituted ineffectiveness.
Defendant alleges that Mr. Vason would have testified that Defendant acted "solely
at the request of Garren Smith and that the [D]efendant acted under severe duress."
Defendant alleges that Ms. Earnshaw would have testified that Defendant was "very
passive and timid" the night of the incident and that Defendant was being intimidated
by her male cohort.

The Court granted an evidentiary hearing on these claims.  At the hearing,
Defendant failed to produce either Mr. Vason or Ms. Earnshaw to testify.  Rather,
Defendant testified to what she believed the witnesses would have said had they been
called.[FN 10]  Without presenting testimony from the witnesses themselves,
Defendant has failed to carry her burden of proving her entitlement to postconviction
relief.  <u>See</u> <u>generally</u> <u>Gore v. State</u>, 846 So. 2d 461 (Fla. 2003).  The Court cannot
afford relief on these claims.[FN 11]

[FNS 3–9:  references to trial transcript]

[FN 10:  reference to transcript of evidentiary hearing]

FN 11:  The court would further note that the security video
recording of Defendant's return of the television to Wal-mart was
admitted into evidence at trial.  The jurors, therefore, were able to
view (though not hear) for themselves Defendant's demeanor and the
demeanor of her male counterpart during the transaction.  In addition,
the Customer Service Manager who dealt with the return testified that

a ***male*** was harassing the cashier about getting a cash refund for the
television.  See Id. at 111–20.

(Ex. I at 228–30).

Petitioner's post-conviction appellate counsel argued these issues on appeal of the circuit

court's decision (Ex. J).  The First DCA affirmed without written opinion (Ex. K).

The record supports the state court's finding that defense counsel did pursue a duress

defense.  Defense counsel stated in her opening statement that the evidence would show Petitioner

acted under duress (Ex. B at 27–29).  Counsel stated the evidence would show Petitioner acted at

the direction of her boyfriend, Garren Smith, because she was very afraid of him due to his mental

and physical abuse (*id.*).  Counsel also stated the evidence would show that Petitioner's history of

involvement in abusive relationships rendered her vulnerable to Smith's control and domination

(*id.*).  Counsel presented testimony from Gloria Causell, Petitioner's mother, that (1) while Petitioner

was dating Garren Smith, she observed bruises on Petitioner's arms and legs and a black eye, (2)

while Petitioner dated a previous boyfriend, Donald Copeland, she observed injuries on her body,

(3) in the summer of 2003, when Petitioner was dating Garren Smith, she (Petitioner's mother) filed

a missing persons report on Petitioner, (4) she observed Petitioner's demeanor during a telephone

conversation with Garren Smith in January of 2004, when he called her from jail (the crimes

occurred January 15, 2004), and Petitioner was upset, crying, and pacing, (5) Garren Smith called

Petitioner two or three times while he was in jail, and (6) there seemed to be an urgent need to bail

Smith out of jail, and Petitioner even attempted to sell her car to bail him out of jail (*id.* at 253–60,

66–68).  Ms. Causell also testified that prior to the crimes, Petitioner told her that Garren Smith had

threatened her (Petitioner), Petitioner's daughter, and Ms. Causell herself (*id.* at 263–65).

Defense counsel also presented testimony from Nicole Pearson, Petitioner's sister, that she

observed a black eye, "busted" lip, and bruises on Petitioner's back and leg when she was dating

Donald Copeland (Ex. B at 268–70).  Ms. Pearson also testified she observed Garren Smith push

Petitioner against a car and saw bruises on Petitioner's back (*id.* at 272).  She testified she observed

bruises on Petitioner's arms and legs on another occasion while she was dating Garren Smith (*id.*

at 273).  Ms. Pearson testified she overhead three or four telephone calls between Petitioner and

Garren Smith during the time Smith was in jail (*id.* at 274).  She testified Petitioner was afraid of

Smith, and was upset, crying, and seemed desperate to come up with money to bail him out of jail (*id.* at 274–75).

Defense counsel presented testimony of James Larson, a clinical psychologist (Ex. B at 280–301). Dr. Larson testified that he conducted a psychological evaluation of Petitioner, including an interview with Petitioner and Petitioner's mother, review of a psychological evaluation by another doctor, review of police reports and depositions regarding the incident, and review of the infirmary records of the jail where Petitioner was being detained (*id.* at 282). He testified Petitioner suffered from post-traumatic stress disorder caused by trauma from abuse she suffered as a child, including rape, and adult abusive relationships with men in which she was physically beaten, threatened with guns, or threatened with death if she left the relationship(s) (*id.* at 283–84). Dr. Larson testified these events resulted in Petitioner's having anxiety, flashbacks, nightmares, and difficulty sleeping (*id.* at 284). He testified that persons in abusive relationships become helpless and afraid to leave (*id.*). He testified such fear was well-founded in light of evidence that women who leave battering relationships are most likely to be killed when they leave (*id.* at 284–85). He also testified women in abusive relationships suffer from "learned helplessness" (*id.*). He testified that men who batter women attempt to control them, and women often minimize the abuse and make excuses for the batterer (*id.* at 285–86). Dr. Larson testified Petitioner exhibited characteristics that made her susceptible to being controlled by her abuser, even though he was incarcerated (*id.* at 286–87). He testified:

> People, like in this particular case, he [Garren Smith] had made threats before that he will kill her. If you leave me, I will kill you. I'll track you down and kill you.
>
> And, you know, the person brings out a gun at one time or another, and he says things like, I've killed before and I'll kill again. You won't get out of this alive. You won't ever leave me.
>
> So under those kind of circumstances, the fact that the person is locked up doesn't give the woman much comfort. Particularly if she knows he's going to get out again.

(*id.* at 287).

Petitioner herself testified about her abusive childhood and abusive relationship with boyfriends (Ex. B at 177–96).  She testified that during the days prior to the crimes, Garren Smith threatened to "f*** up" her mother or daughter if she did not get him out of jail (*id.* at 187–88).  She testified Garren put a gun to her head on several occasions, both before and after the crimes (*id.* at 195–96).  She testified he held her hostage at gunpoint at her cousin's house (*id.* at 195).  Petitioner admitted she planned to rob someone to get bail money, but testified she was not "in [her] right state of mind at that time" (*id.* at 191–92).  She testified she felt desperate and that time was running out (*id.* at 193).  She also testified that two men were with her, Christopher and Clifford; Christopher was her cousin, and Clifford was Garren Smith's friend (*id.* at 193).  She testified that her fear of Garren Smith motivated her to commit the offenses (*id.* at 177–96).

In closing argument, defense counsel vigorously argued that the duress defense applied to Petitioner's situation (Ex. B at 343–53).  Additionally, counsel requested a jury instruction on the duress and necessity defense, and the trial court gave the instruction, including that the jury should find Petitioner not guilty if they found from the evidence that she committed the crimes charged, or any lesser included offenses, out of duress or necessity (*id.* at 376–79).  Based upon this record, counsel did not perform deficiently by failing to present a defense that Petitioner was not a willing participant and only committed the offenses under duress from "male ringleaders."

Furthermore, Petitioner failed to show deficient performance or prejudice with regard to counsel's failure to present testimony from Christopher Vason and Virginia Earnshaw.  Complaints of ineffective assistance of counsel based upon counsel's failure to call certain witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.  *See* Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision" that seldom, if ever, serves as grounds to find counsel's assistance ineffective.  Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004).

In the instant case, Petitioner was represented by counsel, Mr. Swiatek, at the post-conviction evidentiary hearing and had the opportunity to present evidence as to the substance of the testimony Mr. Vason and Ms. Earnshaw would have provided at trial.  Other than Petitioner's own speculation as to the substance of their testimony, she failed to offer any evidence, in the form of affidavits or

testimony from these witnesses, of the content of either witness's proposed trial testimony. Moreover, the testimony of Petitioner's trial counsel, Ms. Richards, at the post-conviction evidentiary hearing suggests Mr. Vason's testimony would not have been helpful to the defense. Ms. Richards testified she viewed Mr. Vason's videotaped statement to law enforcement  and determined it "absolutely" would not have been helpful, because Vason would have testified that Petitioner was the "ringleader" (Ex. I at 206–07).  Ms. Richards testified she was relieved that the prosecutor did not intend to present Mr. Vason's testimony at trial, and when she communicated this to Petitioner, Petitioner did not inform her that Vason would add anything to the defense (*id.* at 207–08).   Beyond Petitioner's own conclusory, speculative statements, she did not make any showing that Vason would have testified favorably.  As to Virginia Earnshaw, Ms. Richards testified she reviewed Ms. Earnshaw's statement to police and determined it would not have been helpful, because Ms. Earnshaw did not indicate that Petitioner appeared intimidated by one of the male participants (*id.* at 191–94).   In light of the record, Petitioner failed to demonstrate deficient performance or prejudice with regard to counsel's failure to call Mr. Vason and Ms. Earnshaw as witnesses.

Finally, to the extent Petitioner contends defense counsel should have presented a "minor participant" defense, that is, she was less culpable than the "male ringleaders" who committed the crimes with her, Petitioner failed to show that defense counsel had a legal basis for asserting such a defense.  Florida criminal statutes provide for the imposition of criminal liability based upon a principal theory:

> Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense.

Fla. Stat. § 777.011.   Therefore, defense counsel had no basis to argue or present evidence suggesting Petitioner should not be found guilty because she was only a minor participant in the crimes.[8]

Based upon the foregoing, Petitioner has failed to show that the state court's adjudication of her ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, she is not entitled to habeas relief on Ground One.

> B.      Ground Two:  "Trial court erred for allowing the feds to plant informant to obtain information."

In Ground Two, Petitioner asserts federal officials planted an informant to obtain statements from her, even though she was represented by counsel (doc. 1 at 3).  She contends the trial court violated her due process rights by "allowing" the officials to plant the informant, even though none of her statements were admitted at trial (*id.*).  She asserts she raised this claim in state court by alleging "failure to investigate/present exculpatory evidence" (*id.*).

Respondent asserts Petitioner failed to properly exhaust this claim (doc. 12 at 30). Respondent states Petitioner exhausted a claim of ineffective assistance of counsel with respect to counsel's failure to investigate and present a tape recorded conversation, arranged by the United States Marshals Service, between Clifford Vason and Petitioner; however, Petitioner did not fairly present a due process claim based upon the court's "allowing" the conversation to occur (*id.*). Respondent further contends Petitioner can no longer return to state court to litigate the claim of trial court error, because a second direct appeal is unavailable (*id.* at 30).  Therefore, the claim is procedurally barred from federal review (*id.*).

Respondent's procedural default argument is supported by the record.  Petitioner did not raise this claim of trial court error on direct appeal or in any of her post-conviction motions.  Further, she cannot return to state court to present the claim, because Florida procedural rules do not provide

---

[8] Although minor participation is a mitigating circumstance under which a sentencing court may depart from the lowest permissible sentence, *see* Fla. Stat. § 921.0026, Petitioner's claim in Ground One concerns counsel's failure to present evidence of her minor participation as a defense to the crimes, not a mitigating factor in determining her sentence.

for a second direct appeal, and a second Rule 3.850 motion would be subject to dismissal as second or successive.  *See* Fla. R. Crim. P. 3.850(f).  Therefore, the claim is procedurally defaulted.

Petitioner does not allege cause for her failure to present the claim to the state courts. Further, she cannot establish prejudice from the procedural default.  Petitioner concedes that her statements to Mr. Vason, recorded by the United States Marshals Service allegedly in violation of her Miranda rights, were not admitted as evidence at trial.  Therefore, Petitioner cannot establish that the trial court's alleged error in "allowing" federal officials to "plant" Mr. Vason had any effect on her trial.

Moreover, to the extent Petitioner presents a claim of ineffective assistance of counsel based upon counsel's failure to introduce the recording as exculpatory evidence at trial (Respondent concedes Petitioner exhausted this claim of ineffective assistance of counsel), Petitioner is still not entitled to habeas relief.  As part of Ground Two in Petitioner's Rule 3.850 motion, Petitioner claimed defense counsel was ineffective for failing to present evidence obtained by the United States Marshals Service after the Marshals Service arranged for Clifford Vason to visit Petitioner in jail while wearing a wire (Ex. I at 139, 153–54).  Petitioner contends her conversation with Vason was exculpatory, because it would have shown that she was an unwilling participant, and committed the offenses under duress due to threats from "male ringleaders," including Vason (*id.*).

The state circuit court denied the claim on the following grounds:

> In an unnumbered allegation, Defendant alleges that her counsel was ineffective for failing to investigate and bring to court a recording made by the U.S. Marshals.  Defendant claims that said recording contained exculpatory evidence of Defendant's fear and duress.  Defendant asserts specifically that one of the other people involved in the crime came to see her in the Escambia County Jail and secretly recorded her conversation at the direction of the U.S. Marshals.  Defendant states that during the recorded conversation, Defendant repeatedly stated that she was an unwilling participant in the crime, merely carrying out the order of the male ringleaders.  Defendant contends that had the jury heard the recording, the outcome of the proceeding would have been different.

> "Pure speculation cannot be a basis for postconviction relief."  Bass v. State, 932 so. 2d 1170, 1172 (Fla. 2d DCA 2006), citing Jones v. State, 845 So. 2d 55, 64 (Fla. 2003).  In the instant situation, Defendant's claim is speculative.  Defendant cannot show that the jury would have returned a different verdict had they heard Defendant's claims of duress by way of a tape recording rather than from her in-

court testimony.  Defendant does not allege that any statements on the tape differed from her testimony to the jury or that anything was recorded that she could not have simply told the jury herself in court.[FN 36]  This claim cannot satisfy the <u>Strickland</u> test for ineffective assistance of counsel, and Defendant is not entitled to relief on this point.

> FN 36:  Defendant was given leave to amend this claim pursuant to <u>Spera v. State</u>, 971 So. 2d 754 (Fla. 2007).  Defendant's amended claim is still facially insufficient.  <u>See</u> Attachment 6, order [advising Petitioner that her claim was facially insufficient because her allegation of prejudice was not "positive, specific, and factual," and granting Petitioner leave to amend this ground (*see* Ex. I at 149–50)].

(Ex. I at 239–30).

Assuming arguendo that Petitioner's allegedly exculpatory statements to Mr. Vason would have been admissible, Petitioner failed to show her statements would have been helpful to the defense.  Review of Petitioner's trial testimony demonstrates she told the jury she participated in the crimes under duress, because she was afraid that Garren Smith would kill her, her daughter, or her mother if she did not obtain money to bail him out of jail (Ex. B at 178–251).  Therefore, the jury heard firsthand that she was an "unwilling participant."  Further, even if she told Vason during their jail conversation that she was threatened by "male ringleaders," including Vason, the defense would not have been benefitted by the jury's hearing this statement, since it would have contradicted her trial testimony that neither Chris (Saulsberry) nor Clifford (Vason) threatened her in relation to committing the crimes (*id.* at 245).  Therefore, Petitioner failed to show that defense counsel's failure to present the recorded conversation was deficient, or that there is a reasonable probability the trial would have ended differently had the jury heard the conversation.

In light of Petitioner's procedural default of her claim of trial court error, and her failure to demonstrate the state court unreasonably applied <u>Strickland</u> in denying her related ineffective assistance of counsel claim, Petitioner is not entitled to relief on Ground Two.

C.    <u>Ground Three:  "Trial court erred in not granting defendant's motion in limine regarding battered spouse syndrome."</u>

Petitioner contends the trial court violated her due process rights by not allowing her to present evidence in support of a battered spouse syndrome defense (doc. 1 at 4).  She contends

Detective Goss and Supervisor Erica Gandy could have presented information in support of this defense (*id.*).  Petitioner asserts she raised this claim in state court by alleging "failure to call witnesses to support/enforce battered spouse syndrome" (*id.*).

Respondent asserts the same exhaustion argument asserted in Ground Two, that is, Petitioner exhausted a claim of ineffective assistance of counsel with respect to counsel's failure to present testimony from Goss and Gandy; however, Petitioner did not fairly present a due process claim based upon the trial court's excluding testimony regarding battered spouse syndrome (doc. 12 at 32). Respondent further contends Petitioner can no longer return to state court to litigate the due process claim, because a second direct appeal is unavailable (*id.* at 32–33).  Therefore, the claim is procedurally barred from federal review (*id.*).

In Petitioner's reply, she argues both a due process violation based upon the trial court's exclusion of battered spouse syndrome evidence, and a claim of ineffective assistance of counsel based upon counsel's failure to present testimony from Detective Goss and Erica Gandy (doc. 19 at 8).

The record demonstrates the prosecutor filed a pre-trial motion in limine seeking to exclude evidence regarding the fact that Petitioner may suffer from battered spouse syndrome (Ex. A at 29–31).  The grounds for the motion in limine were that Florida law recognized a defense of battered spouse syndrome only in cases where the defendant was charged with committing a crime against the defendant's batterer and was asserting a claim of self-defense, and those circumstances were not present in Petitioner's case (*id.*).  The record reflects the trial court granted the motion in limine (Ex. I at 39–76).  Petitioner did not raise a claim of trial court error regarding this ruling on direct appeal, which was the procedurally proper method of challenging the trial court's ruling.  *See* Rigterink v. State, 66 So. 3d 866, 894–95 (Fla. 2011) (reviewing, on direct appeal, defendant's claim of trial court error with respect to court's granting State's motion in limine); Blanco v. State, — So. 3d —, 2012 WL 1020016, at *2 (Fla. 3d DCA 2012) (same); Wynkoop v. State, 14 So. 3d 1166, 1170 (Fla. 4th DCA 2009) (same); Whitfield v. State, 933 So. 2d 1245, 1249 (Fla. 1st DCA 2006) (same). Further, Petitioner cannot return to state court to present the claim, because Florida procedural rules do not provide for a second direct appeal.  Therefore, the claim is procedurally defaulted.  Petitioner does not allege cause for her failure to present the claim to the state courts.  Therefore, she is not

entitled to federal review of her due process claim.  Petitioner's claim of ineffective assistance of counsel based upon counsel's failure to present testimony from Detective Goss and Erica Gandy will be discussed *infra* in Ground Four.

>    D.    Ground Four:  "Counsel was ineffective for failure to call witnesses with information including [sic] physical and mental abuse."

Petitioner contends counsel was ineffective for failing to present testimony from witnesses regarding the intimidation and physical abuse she suffered at the hands of Garren Smith (doc. 1 at 4; doc. 19 at 9–11).  She asserts her family members Diamond Purifoy, Verrericka Clausell, and Shontay White would have provided eyewitness accounts of Garren Smith's repeated physical abuse (*id.*).  Petitioner alleges Detective Goss would have testified that Petitioner was in a mentally and physically abusive relationship with Garren Smith, that Petitioner had previously been in abusive relationships with violent, controlling men, and that he (Goss) observed her behavior during past incidents of domestic violence involving Garren Smith (*id.*).  Petitioner alleged Erica Gandy would have testified she observed marks on Petitioner's body caused by Garren Smith's physical abuse (*id.*).

Respondent concedes Petitioner exhausted this claim by presenting it in her Rule 3.850 motion (doc. 12 at 34).  Respondent contends Petitioner failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law (*id.* at 33–37).

>    1.    Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

>    2.    Federal Review of State Court Decision

Petitioner presented this claim as Grounds Four and Five in her Rule 3.850 motion (Ex. I at 141–43).  The state circuit court determined the testimony from these witnesses would have been cumulative of testimony from other sources, including Petitioner, her mother, her sister, and Dr. Larson (Ex. I at 231–34).  The court further determined that any testimony regarding battered spouse syndrome would not have been admissible even if counsel attempted to offer it, because the court ruled such evidence inadmissible (*id.*).  The court also determined that the testimony of these witnesses would not have been helpful to the duress defense, because none of these witnesses was

an eyewitness to the offenses or had any firsthand knowledge of whether Petitioner was in imminent danger during the commission of the crimes, or whether she reasonably believed that Garren Smith's threat was imminent during commission of the crimes (*id.*).

The state court's factual findings as to the evidence adduced at trial and the trial court's evidentiary ruling regarding the exclusion of evidence of battered spouse syndrome are supported by the record.  Although the trial court refused to allow Dr. Larson to testify that Petitioner displayed characteristics of battered spouse syndrome, the court permitted Dr. Larson to testify that Petitioner exhibited characteristics that might make her susceptible to pressure, threats, and control by someone else (Ex. I at 44–46, 65; Ex. B at 278–79).  Dr. Larson was also permitted to testify that Petitioner suffered from post-traumatic stress disorder, and that her history of involvement in abusive relationships with men caused her to minimize the abuse she suffered, made her feel helpless to leave Garren Smith, and rendered her vulnerable to Garren Smith's control and domination, even though he was incarcerated (Ex. B at 278–79, 284–87).  Additionally, the court permitted Petitioner, her mother, and her sister to testify (1) Petitioner was previously in an abusive relationship with a boyfriend, (2) at the time of the offenses, she was in an abusive relationship with Garren Smith, (3) Petitioner feared Garren Smith, and (4) during the course of their relationship, Smith had threatened her with a gun (*id.* at 177–99, 253–60, 268–75).  The substance of the testimony of the five potential witnesses identified by Petitioner was in evidence, and Petitioner was able to fully present her duress defense in closing argument.  Therefore, Petitioner failed to demonstrate the state court's adjudication of the claim was unreasonable.

E.      Ground Five:  "Counsel was ineffective for failure to inform defendant of the maximum length of sentence she was facing."

Petitioner asserts counsel advised her that the maximum sentence she could receive if she went to trial was a life sentence, but counsel advised that a life sentence in Florida was actually only twenty-five (25) years in prison (doc. 1 at 4; doc. 19 at 11–12).  Petitioner contends that based upon this erroneous advice, she declined the State's plea offer of thirty (30) years in prison (*id.*).  She states she would have accepted the plea offer had counsel not given her erroneous advice (*id.*).  Petitioner contends the state post-conviction court unreasonably assigned credibility to defense counsel's testimony at the post-conviction evidentiary hearing and failed to consider a letter written

by Petitioner to defense counsel, which demonstrates she was under the belief that the maximum sentence she could receive was 25 years (doc. 19 at 11–12).

Respondent concedes Petitioner exhausted this claim by presenting it in her Rule 3.850 motion (doc. 12 at 38).  Respondent contends Petitioner failed to demonstrate that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of clearly established federal law (*id.* at 38–40).

      1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Six in her Rule 3.850 motion (Ex. I at 143).  The state court adjudicated the claim as follows:

> In her sixth allegation, Defendant alleges that counsel misadvised Defendant "concerning plea offer and the maximum length of sentence of life."  Defendant specifically alleges that her counsel informed her that if she went to trial the worst sentence Defendant could receive would be a life sentence.  Defendant asserts that counsel told her that a life sentence in Florida constituted 25 years, a sentence five years shorter than the sentence the State was offering Defendant in the plea agreement.  Defendant alleges that had counsel effectively advised her, Defendant would have accepted the offered plea.

> At the evidentiary hearing convened in this cause, trial counsel testified that she had not advised Defendant that a "life" sentence in Florida meant 25 years.[FN 25]  In fact, counsel affirmed that Defendant knew before trial that "life meant life" and that counsel "ha[d] no doubt that [Defendant] understood what she was facing."[FN 26]

> Counsel further testified that Defendant had been offered a plea agreement which would have been 30 years in prison to run concurrently to the federal prison sentence Defendant was serving.  Defendant was interested in taking the offer but wanted counsel to find out where Defendant would be serving the concurrent sentence.  Counsel attempted to contact the federal assistant public defender during the lunch break, and when counsel and Defendant returned to the courtroom, the plea offer for concurrent sentencing had been revoked.[FN 27]  Therefore, the deal was no longer available for Defendant's acceptance.  The Court finds the testimony from Defendant's trial counsel to be credible.  <u>See</u> <u>Booker v. State</u>, 969 So. 2d 186, 194 (Fla. 2007) (noting that weighing the credibility of witnesses at an evidentiary hearing on a postconviction motion is the province of the trial court).  Consequently,

Defendant has failed to prove that counsel was deficient or that Defendant was in any way prejudiced.  Defendant is not entitled to relief on her sixth ground.

[FNS 25–27:  references to transcript of evidentiary hearing]

(Ex. I at 234–35).

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); *see also* Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998); Smith v. Kemp, 715 F.2d 1459, 1465 (11th  Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").  Questions of the credibility and demeanor of a witness are questions of fact.  *See* Consalvo, *supra* (citing Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)).  The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e).

Petitioner argues the state court's credibility determination was based upon an unreasonable determination of the facts, because the court failed to consider a letter she wrote to defense counsel, Ms. Richards, indicating Petitioner believed she would not be sentenced to more than thirty (30) years (Ex. I at 223–24).  The letter states, in relevant part:

> . . . I spoke to Tom Keith [Petitioner's defense counsel in her related federal criminal case, in which she was charged with kidnapping and use of a handgun during the commission of a crime of violence, *see* United States v. Purifoy, Case No. 3:04cr96/RV/MD (N.D. Fla. 2004)] today.  After speaking to him, the State still

loose [sic] because my federal sentence is running right now.  It's current [sic] to the State kidnap too.  So the only bad thing is if we loose [sic] trial I'll do my time it [sic] the State and it wouldn't be no [sic] extra time.  The State Attorney need [sic] to comprehend that.  I still do not do no more [sic] than 30 either way.  He can give me 30 all he want [sic] it will not be consecutive.  So he need not waste money by having a trial and explain that to Ms. Gignac [the victim].  I want them to understand that.  That way I can do my time in fed and obtain a college degree.  Do you understand.  So they will not get an additional 30 years.  My federal judge already called the shot.  I'm going to trail [sic] to win to stop my body from doing time in a state prison.  When I can better myself in federal [sic].

(Ex. I at 223).  Ms. Purifoy sent the letter on March 10, 2005, five months prior to her trial (*id.* at 219, 224).

At the post-conviction evidentiary hearing, Petitioner testified as follows:

Q [by Petitioner's post-conviction counsel].  And you state in your motion that you didn't—was it that you didn't understand what the sentence was or that you were misinformed as to what the sentence was?

A.  Didn't understand because I always thought in Florida was 25 to life and when she [Ms. Richards] came, she said she had a plea bargain, which was 30 years to run concurrent with the my [sic] federal sentence, and I said, no, ma'am.  Then she said, okay, 30 years consecutive.  I was like, no, ma'am.

Q.  What was your federal sentence?

A.  Thirty years.  So, I say, well, I might as well go to trial, if you are going get [sic] me 30 years.  I can go to trial and I lose, I get 25.  At that point, she should have halt [sic] and said, Ms. Purifoy, it's not 25 years.  It's natural life.

So, I continuously—I'm on the phone, telling my family, well, I'm just going to go ahead and go the [sic] trial.  I mean, I'd be losing five years if I lose.  So we all under the impression that it's 25 to life.  So when I lost trial [sic] that day, she rubbed my hand and she said, Ms. Purifoy, it's going to be okay.  You've got the chance to appeal.  I was like, okay.  25 years.  She said, no, ma'am, natural life.  I said, natural life?  She say [sic], that's the law in Florida for life.  And at that point after I lost trial, she explained to me what life was in Florida.

(Ex. I at 173–74).  Petitioner further testified that Ms. Richards did not discuss prison releasee re-offender status with her, which mandated a life sentence for the kidnapping conviction (*id.* at 174).

Ms. Richards testified as indicated in the order denying Petitioner's Rule 3.850 motion.  She testified she did not advise Petitioner that a life sentence in Florida meant only twenty-five (25)

years, or that Petitioner would be eligible for parole in twenty-five years (Ex. I at 199, 202).  Ms. Richards affirmed that Petitioner "absolutely" knew before trial that "life meant life," and she (Richards) "ha[d] no doubt that [Petitioner] understood what she was facing." (*id.*).  Ms. Richards testified that during a docket day after Petitioner had been sentenced in her federal case (Petitioner was sentenced on February 16, 2005, *see* Case No. 3:04cr96/RV/MD, doc. 19), the State offered a plea agreement of thirty (30) years in prison to run concurrently to the federal prison sentence Petitioner was serving (*id.* at 202–03).  Ms. Richards testified Petitioner was interested in accepting the offer, but wanted counsel to contact Petitioner's federal public defender, Mr. Keith, to determine whether Petitioner would serve her sentence in a state or federal facility (*id.*).  Ms. Richards testified she attempted to contact Mr. Keith during a lunch break, and when she and Petitioner returned to the courtroom, the plea offer for concurrent sentencing had been revoked, and the State offered a 30-year consecutive sentence (*id.* at 203).  Ms. Richards testified Petitioner thought that the offer of a consecutive sentence was too long, even though Richards warned her that "things could be worse" (*id.* at 203–04).  Ms. Richards testified she received Petitioner's March 10, 2005 letter, in which Petitioner referenced a 30-year sentence, but Petitioner may have sent the letter shortly after the offer of a concurrent 30-year sentence was withdrawn (*id.* at 219).  Ms. Richards testified, "I know I had that discussion with her [that Petitioner was facing a life sentence]."  (*id.*).  The letter was admitted into evidence at the evidentiary hearing (*id.* at 219, 223–24).

The record refutes Petitioner's contention that the state court failed to consider her March 10, 2005 letter as evidence; indeed, the record shows that Ms. Richards accurately described the content of the letter during her testimony, and the court admitted the letter into evidence (Ex. I at 219, 223–24).  Petitioner failed to present clear and convincing evidence to rebut the state court's finding that Ms. Richards credibly testified she advised Petitioner that she faced an actual life sentence if she was tried and convicted.  Therefore, this factual finding is presumed correct.  *See* 28 U.S.C. § 2254(e)(1); Miller-El, 537 U.S. at 340.  In light of this finding, the state court's determination that counsel did not render unconstitutionally ineffective assistance in advising Petitioner concerning the maximum sentence she faced was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to relief on Ground Five.

F.      Ground Six:  "Trial court error for failing to change the venue or recuse presiding judge when victim had a personal relationship with the court."

Petitioner asserts the victim, Ms. Gignac, was on a first name basis with the trial judge (doc. 1 at 4–5).  She states Ms. Gignac worked as a clerk at the courthouse and as an intern at the local sheriff's office (*id.* at 5).  Petitioner contends her due process rights were violated at trial and in the post-conviction proceeding by "failure to seek disqualification of judge" (*id.*).  She states she raised this claim in the state court by asserting defense counsel was ineffective for failing to seek a change of venue and disqualification of the judge (*id.*).

Respondent asserts Petitioner exhausted a claim of ineffective assistance of counsel with respect to counsel's failure to seek a change of venue and disqualification of the judge; however, Petitioner did not fairly present a due process claim based upon the trial court's failure to change venue or recuse herself (doc. 12 at 41).  Respondent further contends Petitioner can no longer return to state court to litigate the due process claim; therefore, the claim is procedurally barred from federal review (*id.* at 41–42).

In Petitioner's reply, she argues both a due process violation based upon trial court error (the court's failure to change venue due to pre-trial publicity and the trial judge's failure or recuse herself) and a claim of ineffective assistance of counsel based upon counsel's failure to file a motion to disqualify the trial judge (doc. 19 at 12–13).

The state court record demonstrates that on direct appeal, Petitioner did not raise a claim of trial court error with respect to the court's failure to change venue or recuse herself (*see* Ex. C).  Direct appeal was the procedurally proper means for raising such claims of trial court error.  *See* Henry v. State, 937 So. 2d 563, 568 n.2 (Fla. 2006) (holding that petitioner's claim that he was denied his constitutional right to a fair and impartial trial when the trial court failed to change venue, raised in Rule 3.850 proceeding, was procedurally barred); Brooks v. State, 787 So. 2d 765, 780 (Fla. 2001) (holding, on direct appeal of conviction, that trial court did not abuse discretion in denying motion to change venue).  Further, Petitioner cannot return to state court to present the claims of trial court error, because Florida procedural rules do not provide for a second direct appeal.  Therefore, Petitioner's claim of trial court error is procedurally defaulted.  Petitioner does not allege

cause for her failure to present the claim to the state courts.  Therefore, she is not entitled to federal review of her due process claim.

With regard to Petitioner's related claim of ineffective assistance of counsel, Petitioner argued in Grounds Seven and Eight of her Rule 3.850 motion that counsel was ineffective for failing to seek a change of venue on grounds of pre-trial publicity and that the victim was a well-known employee of the courthouse, and failing to file a motion to disqualify the trial judge on the ground that the judge made comments that revealed "preconceived decisions" about the outcome of trial and sentencing (Ex. I at 144–46).  The state circuit court adjudicated the claims as follows:

> Defendant . . . alleges in ground seven that counsel, to be effective, should have sought a "change of venue due to conflict of interest where victim was a well known employee at the courthouse" because due to all of the publicity of her case, there was no possibility of an untainted jury.  Defendant asserts that she had "exhausted all prematory [sic] challenges and still was very dissatisfied with the jurors due to lot[s] of the jurors clearly stated that they could not be fair and impartial."[FN 28]

> This ground is facially insufficient in that Defendant has failed to allege with which jurors she was dissatisfied.  Defendant has also failed to allege which of the jurors who deliberated were actually biased.  Also, this court finds that Defendant cannot amend this claim in good faith.

> When a defendant makes sworn statements to a court, she cannot later disavow those statements in a motion for post-conviction relief.  "An appellant is not entitled to go behind sworn representations made to the court in a postconviction proceeding."  Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006), citing Stano v. State, 520 So. 2d 278, 280 (Fla. 1988).

> At the conclusion of the selection of the jury, the Court put Defendant under oath and asked whether she had been able to participate in jury selection.  Defendant agreed that she had.  The Court then asked Defendant whether she were [sic] satisfied with the panel that had been chosen.  Defendant stated that two of the jurors whom she had wanted on the jury had been struck by the State.  The Court asked Defendant if she were [sic] otherwise satisfied with the jury.  Defendant stated that she was.[FN 29]  At that juncture, Defendant had the opportunity to tell the Court that she believed some of the jurors to be biased, but she did not do so.  Rather, she told the Court that she was satisfied with the jury.  Defendant cannot now go behind her sworn statements to the Court to complain that she was not, after all, satisfied with the selected jury.  This claim entitled Defendant to no relief.
> . . . .

In her eighth claim, Defendant contends that counsel's failure to move to disqualify the presiding judge amounted to ineffective assistance of counsel. Defendant alleges that the trial judge had a personal and working relationship with the victim, prejudged the punishment Defendant would received if convicted, and left the State's motion for mistrial open until after the outcome of the trial was known.[FN 30]

"Disqualification is ordinarily required in any situation where the facts are reasonably sufficient to create a well-founded fear in the mind of the moving party that he will not receive a fair trial." Siegel v. State, 861 So. 2d 90, 92 (Fla. 4th DCA 2003).

<u>Relationship with Victim</u>

Defendant alleges that the trial judge knew the victim and had "a personal and work relationship with the victim in the case." Defendant claims that the trial judge was on a "first name basis" with the victim. Defendant alleges that the judge was therefore biased and unable to be fair and impartial.

The mere fact of a relationship between the judge and the victim does not demonstrate bias. See generally Kormondy v. State, 983 So. 2d 418, 433–34 (Fla. 2007). To prevail on a motion for postconviction relief due to failure to recuse the trial judge, Defendant must show that she was prejudiced by counsel's inaction. See Caughron v. State, 767 So. 2d 606, 607 (Fla. 4th DCA 2000), citing Strickland v. Washington, 466 U.S. 668 (1984).

The victim in this case was a courthouse employee with whom any of the judges in Escambia County may have been familiar.[FN 31] Hence, the fact that the judge knew the victim and was on a "first name basis" with her does not show that the judge was biased against Defendant. Defendant alleges two instances which she claims evidence the judge's bias and prejudiced her. First, she claims that the judge had pre-determined her sentence. Secondly, Defendant alleges that the fact that the judge did not rule on the State's motion for mistrial until near the end of the trial shows that the judge was biased against her.

<u>Pre-determined Sentence</u>

Defendant alleges that the trial judge knew what sentence the Court would impose before the trial ever started. The statute regarding Prison Releasee Reoffenders (PRR) states,

Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender . . . such defendant . . . ***must*** be sentenced as follows: For a felony punishable by life, by a term of imprisonment of life . . .

[and] shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release.  Any person sentenced [as PRR] must serve 100 percent of the court-imposed sentence.

Section 775.082(9)(a), (b), Florida Statutes (2004) (emphasis added).   Once Defendant was found guilty of armed kidnapping with a firearm,[FN 32] and the State proved that Defendant qualified for PRR sentencing,[FN 33] the sentence of life without parole was mandatory.  No judge applying Florida law would have had any discretion as to the length of sentence to be served by one convicted of the instant offense and sentenced under the PRR statute.  Consequently, Defendant has not shown that a mandatory sentencing scheme was a fact reasonably sufficient to create a well-founded fear of bias.

<u>Mistrial</u>

After an outburst by Defendant on the witness stand, the State moved for a mistrial.  The court took the motion under advisement, but allowed the case to continue.[FN 34]  Just before the final rebuttal witness was to take the witness stand, the Court sent the jury out and revisited the issue of the requested mistrial.  The Court found that Defendant's outburst was "not necessarily exculpatory."  Based on that finding, the State withdrew the motion.[FN 35]  The Court does not find that the Court's actions or decisions regarding the motion to mistrial were in any way biased or sufficient to create a well-founded fear of judicial bias.

As Defendant has failed to state any claim that could have formed the basis for a valid motion for recusal of the trial judge, the Court finds that Defendant has failed to show that her counsel was deficient or that she was prejudiced by counsel's failure to file such a motion.  Defendant is, therefore, not entitled to relief as to this claim.

FN 28:  Defendant also alleges that bailiffs, sheriff's office employees, and other court-affiliated personnel had personal relationships with the victim.  The Court finds the victim's affiliations to be irrelevant to Defendant's ability to receive a fair and impartial trial.

[FN 29:  reference to excerpt from transcript of jury selection]

FN 30:  Defendant also alleged as part of her allegations in ground seven that the judge threatened her while she was on the stand at trial, saying, "Remember I have to sentence you."  However, the

transcript reflects that no such "threat" was ever made.   <u>See</u>
Attachment 2 at 177–252.

> [FN 31:  reference to trial transcript]

> [FN 32:  reference to verdict form]

> [FN 33:  reference to transcript of sentencing hearing]

> [FNS 34, 35:  reference to trial transcript]

(Ex. I at 235–39).

        With regard to the state court's findings of fact as to statements made and events that
transpired during Petitioner's trial and sentencing, Petitioner has failed to show by clear and
convincing evidence that any of those findings are unreasonable.  Further, all of the court's findings
are well supported by the record.  Therefore, a presumption of correctness attaches to the court's
factual findings.

        With regard to counsel's failure to seek disqualification of the trial judge, the state court
determined that Petitioner failed to state any grounds that could have formed the basis for a valid
motion for recusal of the trial judge under state law.  A determination of whether certain allegations
satisfy Florida's legal standard for disqualification of a judge is solely within the province of the
Florida courts.  "[A] state court's interpretation of state law . . . binds a federal court sitting in
habeas corpus."  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005);
<u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts
are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on
matters of state law) (citations and footnote omitted); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055
(11th Cir. 1983).  In light of the state court's determination that Petitioner failed to allege any basis
for counsel to file a valid motion to disqualify the trial judge, Petitioner failed to show deficient
performance by counsel, or that there is a reasonable probability that the trial court would have
properly granted a motion for disqualification had counsel made one.

        The same rationale applies to the state court's denial of Petitioner's claim based upon
defense counsel's failure to request a change of venue.  In Florida, the test for determining change
of venue is "whether the general state of mind of the inhabitants of a community is so infected by

knowledge of the incident and the accompanying prejudice, bias, preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom." Brooks, 787 So. 3d at 780 (quoting Rolling v. State, 695 So. 2d 278, 284 (Fla. 1997)). Before ruling on such a motion, Florida trial courts are ordinarily permitted to attempt to empanel a jury.  *Id.* (citing Henyard v. State, 689 So. 2d 239, 245 (Fla. 1996)).  This process provides trial courts with an opportunity to determine, through the voir dire examination of prospective jurors, whether it is actually possible to find individuals who have not been so infected by the pretrial publicity that they are unable to independently review the evidence at trial. *Id.* (citing Rolling, 695 So. 2d at 285).  Under Florida law, to be qualified as a juror, a person need not be completely ignorant of the facts of the case.  *See id.*  Rather, the issue may turn on the nature and extent of the pretrial information the juror has acquired and an analysis as to whether a juror "can lay aside his impression or opinion" based upon any pretrial information and "render a verdict based on the evidence presented in court." *Id.* (citing Rolling, *supra*; Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961)).

In the instant case, review of the transcript of jury selection in Petitioner's case provides no support for Petitioner's conclusory assertion that pre-trial publicity required a change of venue (Ex. I at 77–127).  During voir dire, defense counsel asked prospective jurors whether anyone recalled seeing anything in the media about Petitioner's case (Ex. I at 110).  One prospective juror, Ms. Burst, indicated she had seen something about the case (*id.*).  However, defense counsel struck Ms. Burst for cause; therefore, she did not serve on the jury (*id.* at 123, 125).  After the prosecutor and defense counsel agreed to six jurors and an alternate, the trial court asked Petitioner whether she was satisfied with the jurors that were selected, and Petitioner stated, under oath, that she was satisfied (*id.* at 124).

Petitioner failed to show defense counsel had a meritorious basis for arguing it was impossible to find individuals who had not been so infected by the pretrial publicity that they were unable to independently review the evidence at trial.  Moreover, as the state court determined, the fact that the victim was well-known by employees of the courthouse and sheriff's office did not provide a valid basis for seeking a change of venue.  In the absence of a valid basis for counsel's filing a motion to change of venue, Petitioner failed to show counsel performed deficiently in this

regard, or that there was a reasonable probability the trial court would have properly granted a motion to change venue.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Six.

G.    Cumulative Effect

The court notes that in Petitioner's reply brief, she contends the cumulative effect of the constitutional errors identified in Grounds Two, Three, and Six, *supra*, denied her a fundamentally fair trial (doc. 19 at 7).

Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[9] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254.[10]  *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying

---

[9] *See* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

[10] The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel."  Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished).  However, the court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[11]

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  See United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero."); see also United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, supra; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh,

---

[11] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  See Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims.  See Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007).  The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue.  See Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland.  See Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007).  Thus, Petitioner must show error with respect to at least two of her individual claims.

As previously discussed, none of the alleged errors of trial counsel, considered alone, approaches the threshold standard of ineffective assistance of counsel.  Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally fair trial.  Furthermore, the claims of trial court error were procedurally barred. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative effect" argument. *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); Ballard v. McNeil, 785 F. Supp. 2d 1299, 1335–37 (N.D. Fla. 2011); *see also* Files v. Tucker, No. 3:09cv490/RV/EMT, 2011 WL 6983135, at *28–30 (N.D. Fla. Dec. 9, 2011) (unpublished), *Report and Recommendation Adopted at* 2012 WL 83369 (N.D. Fla. Jan. 11, 2012); Rasley v. Buss, No. 5:08cv368/RH/EMT, 2011 WL 2358650, at *32–32 (N.D. Fla. Apr. 11, 2011) (unpublished), *Report and Recommendation Adopted at* 2011 WL 2293383 (N.D. Fla. June 9, 2011); Whitfield v. McNeil, No. 5:07cv120/RS/EMT, 2010 WL 1930007, at *22–23 (N.D. Fla. Apr. 12, 2010) (unpublished), *Report and Recommendation Adopted at* 2010 WL 1930012 (N.D. Fla. May 13, 2010); Walls v. McNeil, No. 3:06cv237/MCR/EMT, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished).

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Edwin G. Buss as Respondent.

And it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3<u>rd</u> day of May 2012.


                              /s/ *Elizabeth M. Timothy*                    
                              **ELIZABETH M.  TIMOTHY**
                              **UNITED STATES MAGISTRATE JUDGE**


                    <u>**NOTICE TO THE PARTIES**</u>

       **Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**